Cabman F. Babb, J.
This is a motion "by the plaintiff for summary judgment pursuant to CPLR 3212 upon the ground that there was no meritorious defense or triable issue of fact as a matter of law. Plaintiff also moves for a trial preference. The defendant moves for an examination before trial, and the defendant moves to strike the note of issue.
This is an action for an injunction pursuant to section 1251 of the Public Health Law to enforce the water pollution abatement order of the Commissioner of Health, dated March 31, 1967, and to restrain the defendant from discharging untreated and inadequately treated industrial waste and other waste into the Buffalo River in contravention of the stream standards in violation of section 1220 of the Public Health Law and to recover statutory penalties for violations by the defendant of the Commissioner of Health’s order and for violations of sections 1220 and 1225 of the Public Health Law.
This action was commenced by personal service of the summons and verified complaint upon the defendant on June 17, 1970. Issue was joined on July 6, 1970. Defendant served a verified amended answer on July 20, 1970.
The defendant owns and operates a petroleum processing complex located at 635 Elk Street, Buffalo, New York, which is located on the Buffalo River, upstream from its confluence with Lake Erie.
On November 2, 1966 a notice of a hearing was served upon the defendant, which was to be held on November 28, 1966 *77 in Albany, New York, to determine the validity of complaints against the defendant for alleged violations of article 12 of the Public Health Law and to determine whether the defendant caused or contributed to cause a condition in contravention of the standards adopted for the Buffalo River.
Upon consent of the parties the public hearing was adjourned and on March 28, 1967 the defendant stipulated in writing: “facts exist upon which the annexed proposed order may be predicated and that such order may be made, filed and served. It is further stipulated that the right to a hearing is hereby waived.”
On March 31, 1967 the plaintiff issued an order to the defendant which directed:
‘ ‘ 1. that said stipulation be and the same is approved and the contents thereof are found, ratified and adopted.
“2. that the respondents on October 1, 1967, cease and abate and thereafter keep abated from the plant which it operates at Buffalo, New York, all discharges of industrial wastes and other wastes into the waters of the Buffalo River in contravention of the standards duly adopted and assigned to the receiving waters, unless said respondent shall:
“ A. Perform engineering studies of the existing waste treatment facilities and also studies of means of eliminating leakage from the storage tanks and delivery facilities and by October 1, 1967, submit to the New York State Department of Health final plans, in approvable form, for the construction of any and all additions and alterations of such waste treatment facilities as may appear to be necessary as a result of such studies.
‘ ‘ B. On or before July 1, 1968, respondent shall commence construction of the necessary additions and alterations to the existing waste treatment facilities in accordance with the said final construction plans.
“ C. On or before December 1, 1969, complete the construction of the said waste treatment facilities in accordance with the plans submitted as hereinbefore set forth.
“ D. Thereafter maintain and operate said waste treatment facilties in such manner that the standards of the receiving waters and the downstream waters shall not thereafter be contravened.”
Thereafter a copy of the order was duly served upon the defendant on or about April 6, 1967.
No application has been made nor has any proceeding been instituted to review the afore-mentioned order or any part *78 thereof, nor has any application been made to the plaintiff to reopen the administrative proceeding.
On October 4,1966, the Water Resources Commission reclassified the portion of the Buffalo River on which the defendant’s waste disposal outlets are located, from “ E ” to “ D ”, which reclassified standards were filed on October 10, 1966 in the office of the Secretary of State and published in the Official Compilation of Codes, Rules and Regulations of the State of New York. (6 NYCRR 837.4.)
Under the Class D classification and standards, the best use is for agricultural or source of industrial cooling or process water supply (6 NYCRR 701.3). Because the waters of the Buffalo River flow into and affect the waters of the Niagara River, classified as class A Special, the quality of any waters receiving sewage, industrial or other waste discharges from the Buffalo River shall be such that there is no impairment of the best usage of the waters of the Niagara River.
Plaintiff has established that the defendant, since October 1, 1967 to the present time, has failed to cease and abate its discharges of industrial waste into the waters of the Buffalo River at and in the vicinity of its waste disposal outlets in contravention of the standards duly adopted and assigned to the receiving waters, and that the defendant has failed to submit final plans for the construction of necessary waste treatment facilities within the timetable provisions of the pollution abatement schedules set forth in the order of March 31, 1967.
The court finds, as a matter of law, upon all the proof and papers submitted, that there is no triable issue of fact, and that the plaintiff is entitled to summary judgment.
The defendant’s violation of the order of the Commissioner of Health and the Public Health Law makes it liable for statutory civil penalties under section 1250 of the Public Health Law as a matter of law.
The defendant is fined in the sum of $10,000 which is to be paid within 10 days and, if not paid within that time, a judgment may be entered without notice.
Air and water pollution have already inflicted a heavy toll on the quality of our environment. The Attorney-Greneral is to be complimented for his vigorous prosecution of this case. The defendant Mobil Oil Corporation owns and operates a long-established oil refinery at 635 Elk 'Street, Buffalo, New York, employing a large number of citizens of this community. Its products are needed and used by other businesses in this community and throughout the country. To grant an injunction *79 closing down Mobil’s operation would bring a large economic loss not only to the defendant but to its employees and would have an adverse economic effect on other businesses throughout the Buffalo community. This court is not aware that any other business has been subjected to such drastic action in this community. This the court would not hesitate to do if the court felt there was any immediate danger to the health of this community. The papers before me do not disclose any such immediate threat to the health of the community.
The court is well aware from personal observation that this defendant is only one of several industries contributing to the pollution of the Buffalo River, and the difficulties of implementing the pollution abatement and control law as stated in section 1200 of the Public Health Law: “It is declared to be the public policy of the state of New York to maintain reasonable standards of purity of the waters of the state consistent with public health and public enjoyment thereof, the propagation and protection of fish and wild life, including birds, mammals and other terrestrial and acquatic life, and the industrial development of the state, and to that end require the use of all known available and reasonable methods to prevent and control the pollution of the waters of the state of New York.” (Emphasis supplied.) and subdivision 1 of section 1209 of the Public Health Law which provides: “It is recognized that, due to variable factors, no single standard of quality and purity of the waters is applicable to all waters of the state or to different segments of the same waters.’’
It was also recognized by the Legislature that it would take time to bring about the desired effect. Subdivision 2 of section 1223 states: “ If the commissioner finds * # * that such discharge constitutes pollution in contravention of the classifications made and the standards adopted * * * he shall enter an order directing the polluter to take such steps as may be necessary to abate the polluting content of such discharge * * * his order shall establish the reasonable time or times within which the required steps, both intermediate and final, are to be táken.”
The court must balance the interest represented by the right of the community to the immediate abatement of the discharge of industrial waste into the Buffalo River and the economic loss that would be suffered by the defendants, its employees and the community.
Although the defendant, Mobil Oil, has failed to comply with the Commissioner’s order of March 31, 1967 to clean up its *80 effluent discharges and to prepare and submit plans for construction of pollution abatement facilities, it has since March 31, 1967 made an attempt to reduce pollution of the Buffalo River. The defendant has in the past made and installed water pollution abatement devices, including an eight-bay separator facility designed to separate oil and other impurities from waste water prior to discharge into the Buffalo River. The defendant has also developed a recycling of the water reducing the phenol discharge into the Buffalo River. Part of the delay in installing water pollution abatement facilities was that in 1967, at the time of the Commissioner’s order, the defendant contemplated that it would close down its refinery and would only operate a marketing terminal from its plant. Mobil submitted, to the State, plans setting forth steps in water pollution abatement which were approved and the work was completed on March 31, 1968 but plans did not include discharges caused by the refinery operation. The refinery was not closed and still is in operation and Mobil has submitted a number of plans to the State concerning the refinery which have not been approved.
On August 7, 1970 the Department of Environmental Health approved the concepts of the preliminary report for major contaminated waste stream control but required certain details to be investigated and developed before Mobil’s final report and plans are submitted. Therefore, in the interest of justice the defendant should be given further time to comply with the order of March 31, 1967.
The defendant is directed to undertake the water pollution abatement program at.its petroleum processing complex located at 635 Elk Street, Buffalo, New York, in accordance with the following schedule:
1. On or before October 15, 1970, it shall submit to the Commissioner of Environmental Conservation of the State of New York: (a) an approvable report supplementing the revised waste water facilities report submitted to the Department on or about July 2, 1970, hereinafter referred to as 11 supplemental report ’ ’, which supplemental report satisfactorily responds to the items of the plaintiff’s letter of comments to defendant dated August 7, 1970; and (b) an approvable final engineering report and plans and specifications for construction of facilities to accomplish such water pollution abatement program.
2. On or before December 1, 1970, it shall initiate construction of said facilities, in accordance with said approved supple *81 mental report and said approved final engineering report and plans and specifications, and thereafter diligently proceed with such construction.
3. On or before July 15, 1971, it shall complete construction of said facilities, in accordance with said supplemental report, final plans and approved engineering report and place them in operation.
4. After July 15, 1971, it shall operate said facilities in such manner that there is no violation of the provisions of article 12 of the Public Health Law or of Part 700 to 703 and Part 837 of Title 6 of the Official Compilation of Codes, Rules and Regulations of the State of New York and Part 73 and Subpart 75-1 of Title 10 of said official compilation, except in case of a mechanical failure, not due to any negligence on the part of the defendant, which is corrected within 24 hours.
The conditional judgment, which is to become absolute only upon application to the court upon five days’ written notice to the defendant in the event the defendant fails to comply with any one or more of the terms and conditions of numbered paragraphs “ 1 ”, “ 2 ” and “ 3 ” above, is hereby granted for the following relief:
1. Directing the defendant, its officers, agents, servants and employees to immediately cease and discontinue the discharge of industrial waste and other wastes from its Buffalo petroleum complex into the Buffalo River.
2. Enjoining and restraining the defendant, its officers, agents, servants and employees from thereafter causing or permitting the discharge of industrial wastes or other wastes from its Buffalo petroleum processing complex into the Buffalo River;
(a) until it has completed the construction of the waste treatment facilities referred to in number ‘ ‘ 2 ” above, in accordance with the approved supplemental report and the approved final engineering report and plans and specifications referred to in number “ 1 ” above; and
(b) until it has placed said facilities in operation.
This court shall retain continuing jurisdiction of the parties in this action, and in the event of any default by defendant in complying with the terms and provisions of this decision, plaintiff may apply to the court, upon five days’ written notice to the defendant, for such other or different relief as may be just and proper.
It is further directed that authorized representatives of the State Commissioner of Environmental Conservation are *82 authorized and permitted to enter upon and inspect the defendant’s petroleum processing complex in Buffalo, New York, and take samples, from time to time, at any reasonable hour of the day.
It is further directed that if, because of any act of God, war, strike, riot, catastrophe, failure or delay of suppliers, or other conditions beyond its control, the defendant determines that it cannot meet the aforesaid water pollution abatement schedule, or if plaintiff fails within 30 days after submission to notify defendant as to whether it approves or disapproves said supplemental report or said final engineering report and plans and specifications, or if plaintiff unreasonably fails to approve said supplemental report and said final engineering report and plans and specifications, or in the event any necessary permit is unreasonably withheld, defendant may, on five days’ written notice to the plaintiff’s attorneys, apply to this court for an extension or modification of such schedule.